UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| VICKI WIELGOS,<br><br>    Plaintiff,<br><br> v.<br><br>THE IDAHO BOARD OF LAND COMMISSIONERS; C.L. OTTER, Governor of Idaho, BEN YSURSA, Secretary of State, LAWRENCE WASDEN, Attorney General, TOM LUNA, Superintendent of Public Instruction, BRANDON WOOLF, State Controller, and their Successors in office all in their Official capacities and the IDAHO STATE DEPARTMENT OF LANDS, and TOM SCHULTZ, Director, in his Official capacity,<br><br>    Defendants. | Case No. 1:14-CV-00542-EJL<br><br>**MEMORANDUM DECISION AND ORDER** |

  Pending before the Court in the above-entitled matter is a Motion for Temporary Restraining Order and Preliminary Injunction (Dkt. 3) by Plaintiff Vicki Wielgos ('Plaintiff'). Having fully reviewed the record herein, the Court finds that the facts and legal arguments are adequately presented in the briefs and record. Accordingly, in the

1

interest of avoiding further delay, and because the Court conclusively finds that the decisional process would not be significantly aided by oral argument, this motion shall be decided on the record before this Court without a hearing.

## PROCEDURAL BACKGROUND

On December 31, 2014, the Court denied Plaintiff's request for a temporary restraining order, but set an expedited briefing schedule on her request for a preliminary injunction. (Dkt. 5.) After briefing was completed on the preliminary injunction request, the parties attempted to settle this matter. The case was stayed pending outcome of the settlement conference. (Dkt. 16.) During the settlement conference, the parties agreed to a further stay of proceedings pending the holding of an auction to sell both the State's real property located at 30 Woody's Point Road, and the improvements thereon owned by Plaintiff. This Court stayed the case pending the auction, and ordered the parties to submit a Joint Status Report within two weeks of the completion of the auction. (Dkt. 18.)

Following the auction, the parties submitted a Joint Status Report notifying the Court that there were no bidders for either the State's real property at 30 Woody's Point Road, or for the improvements thereon owned by Plaintiff. (Dkt. 20.) The parties requested the Court consider Plaintiff's pending motion for a preliminary injunction, and agreed that neither would take any action to alter the status quo pending this Court's decision. (*Id.*)

On June 21, 2016, Plaintiff filed an affidavit in support of her injunction request. (Dkt. 21.) The affidavit states Cheryl Moody, a prospective buyer of properties located

in Priest Lake, Idaho, was interested in buying Plaintiff's home and the State property located thereunder, and made an offer to Plaintiff and the State in April, 2015.  Ms. Moody's offer was only binding if the State agreed to auction the property to her for the appeal appraiser's value, using standard certified appraisal practices.  (*Id*., ¶¶ 5-6.)  Although Plaintiff accepted Ms. Moody's offer, Ms. Moody alleges the State failed to ever respond.  (*Id*., ¶8.)  Ms. Moody subsequently purchased another property.  (*Id*., ¶9.)

On June 28, 2016, Defendants filed a Motion to Strike Ms. Moody's Affidavit (Dkt. 22) and a Motion for Summary Judgment (Dkt. 24).  Because, as explained below, the Court finds it lacks subject matter jurisdiction to hear Plaintiff's case, it has not considered Ms. Moody's affidavit, the Motion to Strike, or Defendants' Motion for Summary Judgment.

**FACTUAL BACKGROUND**

The State Board of Land Commissioners ("Land Board") is composed of the Governor, the Secretary of State, the State Controller, the Attorney General, and the Superintendent of Public Instruction.  Idaho Const. art. IX, § 7.  The Board members "are trustees of about 2.5 million acres of lands that the United States granted in trust to the State to support public schools and certain other public institutions."  *Wasden v. State Bd. of Land Comm'rs*, 280 P.3d 693, 695 (Idaho 2012) (*quoting Idaho Watersheds Project v. State Bd. of Land Comm'rs*, 982 P.2d 358, 359 n. 1 (Idaho 1999)).  The State of Idaho's

endowment trust lands include 354 residential lots on Priest Lake in northern Idaho.[1]  *Id*. These residential lots are commonly called "cottage sites." *Id*.

Beginning in 2003, Plaintiff leased a Priest Lake cottage site from the Idaho Department of Lands. Plaintiff purchased the improvements on the cottage site from a previous lessee. At that time, Idaho Code § 58-310A provided for the renewal of cottage site leases at fair market rent without the possibility of public auction. *Wasden*, 280 P.2d at 695. In most circumstances, when two or more people seek to lease State endowment land, the Department of Lands is required to hold an auction and award the lease to the highest bidder. *See* I.C. § 58-310(1). Although I.C. § 58-310A exempted cottage sites from this "conflict auction" requirement, in 2012, I.C. § 58-310A was ruled unconstitutional by the Idaho Supreme Court, which held that "in eliminating the conflict auction procedure and instead requiring 'market rent'—the legislature encroached upon the discretion constitutionally granted to the Land Board." *Wasden*, 280 P.3d at 700.

Following the *Wasden* decision, the Land Board and Plaintiff entered into a one-year lease ("Lease") that incorporated the changes to renewal required under *Wasden*. The Lease eliminated reference to renewal under I.C. § 58-310A, and retained the following provisions regarding the disposition of lessee-constructed improvements upon expiration of the Lease:

> K1.4.b. **Upon Non-Renewal by Lessor**. Should Lessee apply to renew this lease in the manner provided by law and such application shall be denied, then Lessor

---

[1] The State's endowment trust lands also include 168 lots on Payette Lake in central Idaho. *Id*.

> shall purchase the approved improvements placed or caused to be placed on the leased premises by Lessee, at the fair market value of such improvements as of the effective date of expiration. Fair market value of such improvements shall be established by appraisal.
>
> K1.4.e. **Upon natural expiration with no application to renew**. In the event this lease expires without Lessee having made application to renew, Lessor shall have the right to require Lessee to remove all approved improvements placed or caused to be placed upon the leased premises by the Lessee, and to require Lessee to restore the leased premises to as nearly as is reasonably practical to its natural condition, all at Lessee's sole cost and expense, or, at Lessor's option, to purchase such approved improvements from Lessee at the fair market value of the same as of the date of expiration.

(Dkt. 7, pp. 4, 14.)

Plaintiff's Lease expired on December 31, 2014. Pursuant to I.C. § 58-310, the Land Board offered to Plaintiff, and to any competing applicants, a new long-term lease that included a substantial rent increase. (Dkt. 1, ¶ 7.C.) Specifically, Plaintiff contends the rates under the new lease are approximately 80% higher than the previous one-year lease rate, which was almost double the previous two-year lease rates. (*Id.*, ¶ 7.B.) Plaintiff suggests the new rent rates were established according to appraisals commissioned by the Department of Lands that are inflated above fair market value and conducted according to improper appraisal methodology. (*Id.*) Plaintiff claims she cannot afford the new rent rates and does not want to continue to lease the site, but wishes to be paid for the value of her residence. (*Id.*) Plaintiff argues the new lease offered to her by the Land Board effectively denies her "renewal," so that she is "entitled to compensation by the Department for improvements on the lease land" pursuant to § K.1.4.b of the Lease.

Defendants respond that, because the Lease incorporated the changes mandated by the *Wasden* decision, the reference to renewal "in the manner provided by law" in section K1.4.b of the Lease incorporated the provisions of I.C. § 58-310, which provide that expiring leases must be made available for competing lease applications, with the "annual rent to be established by the state board of land commissioners." (Dkt. 6, p. 3.) Defendants interpret the Lease and I.C. § 58-310 to require that existing lessees must agree to rental rates and lease terms established by the Land Board in order to re-lease cottage sites, and that failure to apply for such re-lease requires removal of improvements pursuant to § K1.4.e of the Lease. (*Id.*, p. 4.)

Plaintiff filed the instant suit on December 22, 2014, alleging a claim under 42 U.S.C. § 1983 for taking of property in violation of the Fifth Amendment, a claim under § 1983 for taking of property by imposition of "unconstitutional conditions," a claim under § 1983 for deprivation of property without due process of law, and a claim under § 1983 for an equal protection violation. Plaintiff seeks declaratory and injunctive relief. Although, to date, Defendants have not initiated judicial proceedings to oust Plaintiff from her lease site, Plaintiff seeks a preliminary injunction restraining Defendants from taking any action to deprive her of the use and benefit of her improvements. Defendants seek to dismiss Plaintiff's case because this Court lacks subject matter jurisdiction, and also respond to the merits of Plaintiff's claim.

## ANALYSIS

A plaintiff seeking a preliminary injunction must establish that she is likely to succeed on the merits, is likely to suffer irreparable harm in the absence of preliminary

relief, that the balance of equities tips in his favor, and that an injunction is in the public interest. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *see also Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1021 (9th Cir. 2009). A "possibility" of irreparable harm is insufficient; irreparable injury must be "likely" in the absence of an injunction. *Winter*, 55 U.S. at 22. A preliminary injunction is "an extraordinary remedy never awarded as of right." *Id*. at 24. In each case, the court "'must balance the competing claims of injury and must consider the effect on each party of the granting or withholding of the requested relief.'" *Id*. (quoting *Amoco Production Co. v. Village of Gambell, AK*, 480 U.S. 531, 546 (1987)).

However, before the Court may address Plaintiff's Motion for Preliminary Injunction, it must first determine whether it has subject matter jurisdiction to consider Plaintiff's claims. Clearly, a district court may not grant a preliminary injunction if it lacks subject matter jurisdiction over the case before it. *Shell Offshore Inc. v. Greenpeace, Inc*., 864 F.Supp.2d 839, 842 (D. Alaska 2012) (citations omitted). Thus, the jurisdictional questions raised in Defendant's Response to Plaintiff's Motion for a Preliminary Injunction must be considered before evaluating Plaintiff's request for injunctive relief, as the latter issue is moot if this Court is without subject matter jurisdiction. (*Id*.)

**1. Eleventh Amendment Immunity**

The Eleventh Amendment prohibits litigants from bringing suit in federal court against states, state agencies, and state officials acting in their official capacity. *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 144 (1993). The

"Eleventh Amendment's jurisdictional bar applies 'regardless of the nature of the relief sought.'" *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). Accordingly, "the Eleventh Amendment immunity that [state entities] may claim as dependent instrumentalities of [the state] shields them from claims for both monetary and non-monetary relief." *Rounds v. Oregon State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).

There are three exceptions to Eleventh Amendment immunity. First, the Eleventh Amendment does not bar suit against a government official for prospective injunctive relief only. *Ex parte Young*, 209 U.S. 123 (1908). Second, the Eleventh Amendment does not bar suit when a statute allows suits to be brought against states in federal court. And third, the Eleventh Amendment does not bar suit when the state unequivocally consents to be sued in federal court.

### a. Plaintiff's claims against the Land Board and Department of Lands

The Land Board and the Department of Lands are agencies and instrumentalities of the State of Idaho. Idaho Const. art. IX, § 7; I.C. § 58-101. As such, absent congressional abrogation or state waiver, claims against the Land Board and the Department of Lands in federal court are barred by the Eleventh Amendment. *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 268 (1997).

Plaintiff's assertion of claims under 42 U.S.C. § 1983 does not evade the Eleventh Amendment, as the Supreme Court has held § 1983 was not intended to abrogate a State's Eleventh Amendment immunity. *Quern v. Jordan,* 440 U.S. 332, 339 (1979); *Edelman v. Jordan*, 415 U.S. 651, 676 (1974). Nor does the Declaratory Judgment Act

contain any language to suggest abrogation of Eleventh Amendment immunity. *Emberg v. Univ. of Maryland University College Asian Div.*, 3 F.Supp.2d 1127, 1131 (D. Haw. 1998) ("The Declaratory Judgment Act is a procedural statute, and therefore has no language regarding abrogation of a state's Eleventh Amendment immunity."). Nor does Plaintiff suggest the Land Board or the Department of Lands have waived Eleventh Amendment immunity. "In the absence of a waiver by the state or a valid congressional override, '[u]nder the eleventh amendment, agencies of the state are immune from private damage actions or suits for injunctive relief brought in federal court.'" *Dittman v. California*, 191 F.3d 1020, 1025-26 (9th Cir. 1999) (quoting *Mitchell v. Los Angeles Comm. College Dist.*, 861 F.2d 198, 201 (9th Cir. 1989)). Because she has not established any of the three exceptions to Eleventh Amendment immunity, Plaintiffs claims against the Land Board and Department of Lands must be dismissed for lack of subject matter jurisdiction.[2]

### b. Plaintiff's claims against state officers

Plaintiff also asserts claims against the members of the Land Board and the Director of the Department of Lands in "their official capacities," and argues the *Ex parte Young* exception to Eleventh Amendment immunity applies because she seeks only injunctive and declaratory relief. (Dkt. 3-2, pp. 3-4.) While Plaintiff frames her claim as

---

[2] Plaintiff essentially concedes that her claims against the Land Board and Department of Lands are subject to dismissal in her Reply to Defendant's Response to the Motion for Preliminary Injunction. (Dkt. 13, p. 3) (stating whether the agencies are "a part of the case or not makes no determinative difference.")

one for declaratory and injunctive relief, her complaint asks the Court to declare that she "*be paid* the appraised value of the improvements on her cottage site if she does not renew her lease," and to enjoin Defendants from taking any further action to "oust Plaintiff from her house and other improvements *without payment…of just compensation*." (Dkt. 1, pp. 11-12) (emphasis added). The Eleventh Amendment bars actions against state officers that purport to require payment from the State: "[W]hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest and is entitled to invoke its sovereign immunity from suit even though individual officials are nominal defendants." *Ford Motor Co. v. Dept. of Treasury*, 323 U.S. 459, 464 (1945) (*overruled on other grounds in Lapides v. Board of Regents of University System of Georgia*, 535 U.S. 613 (2002)). Although the *Ex parte Young* doctrine allows state officers to be sued in federal court for prospective and injunctive relief, this doctrine cannot be used where, as here, Plaintiff seeks an injunction requiring the payment of funds from the State's treasury. *Virginia Office for Prot. and Advocacy v. Stewart*, 563 U.S. 247, 255 (2011) (citations omitted).

Plaintiff argues it is "well settled that fiscal impacts that are a necessary result of compliance with prospective decrees based on federal rights are not barred by a state's Eleventh Amendment immunity." (Dkt. 13, pp. 4-5) (citing *Edelman v. Jordan*, 415 U.S. 651 (1974)). Plaintiff suggests a decree enjoining Defendants from accomplishing an uncompensated taking is prospective in nature, and thus falls within the limited exception carved out in *Edelmen* where fiscal consequences to state treasuries are the necessary result of compliance with prospective equitable decrees. *Id*. The Ninth Circuit

considered and rejected this argument in *Seven Up Pete Venture v. Schweitzer*, 523 F.3d 948, 956 (9th Cir. 2008).

In *Seven Up Pete Venture*, plaintiff Venture acquired leases of Montana state property for the purpose of mining gold, silver and other trace minerals. Montana voters subsequently enacted an Initiative banning open-pit mining for gold or silver by the cyanide heap leaching process. Venture brought a reverse condemnation action in federal district court against the Governor of Montana and the Director of the Montana Department of Environmental Quality in their official capacities, alleging the Initiative effected a regulatory taking of Venture's property, for which the State of Montana must pay just compensation under the Fifth and Fourteenth Amendments. Like Plaintiff in this case, Venture contended the strictures of the Eleventh Amendment could be avoided by viewing the suit as one seeking prospective injunctive relief. The Court rejected this argument, holding:

> It is impossible to characterize the relief sought by the Venture as prospective. A reverse condemnation action seeks, 'in a strict sense[,]... not just compensation per se but rather damages for the unconstitutional denial of such compensation.' From a remedial perspective, then, 'just compensation' is on all fours with traditional monetary damages, which are the quintessential form of retrospective relief. Thus, reverse condemnation actions cannot qualify as claims for prospective relief, and *Ex parte Young* consequently does not apply.

*Id*. at 956 (citing *City of Monterey v. Del Monte Dunes at Monterey, Ltd*., 526 U.S. 687, 710 (1999).

Plaintiff's claim against state officers seeks payment of compensation for her improvements and does not qualify as a claim for prospective relief; *Ex parte Young* consequently does not apply. Because the Eleventh Amendment bars Plaintiff's takings

11

action in federal court against each of the named Defendants, her suit must be dismissed. This Court does not have jurisdiction over suits by private parties against unconsenting States. *Seven Up Pete Venture,* 523 F.3d at 952.

### 2. Failure to Exhaust State Court Remedies

Even if Plaintiff's claim could be considered one for prospective injunctive relief, Plaintiff's case must be dismissed for failure to exhaust state court remedies. Specifically, a takings claim is not ripe if a plaintiff fails to first "seek compensation through the procedures the State has provided for doing so.*" Williamson Cnty. Reg. Planning Comm'n. v. Hamilton Bank of Johnson City*, 473 U.S. 172, 186 (1985). Under Idaho law, a "property owner who believes that his or her property, or some interest therein, has been invaded or appropriated to the extent of a taking, but without due process of law and the payment of just compensation, may bring an action for inverse condemnation." *KMST, LLC v. Cnty. of Ada*, 67 P.3d 56, 60 (Idaho 2003). Plaintiff has not made use of the inverse condemnation proceedings available to her under state law. As such, her claim that Defendants' actions effect a taking of her property interest in the improvements on her cottage site is not ripe. *Williamson*, 473 U.S. at 186.

Moreover, Plaintiff has not yet been subjected to any physical occupation or ouster from her personal improvements. Defendants have not filed an action for trespass or unlawful detainer, and Plaintiff's home remains on leased land. "The Fifth Amendment does not proscribe the taking of property; it proscribes taking without just compensation." *Hodel v. Virgina Surface Mining & Reclamation Assn., Inc.*, 452 U.S. at 297, n. 40 (1981). If a State provides an adequate procedure for seeking just compensation, the

property owner "cannot claim a violation of the Just Compensation Clause until it has used the procedure and been denied just compensation." *Williamson*, 473 U.S. 195.

Plaintiff argues "state remedies such as the inverse condemnation suit suggested by defendants are post-deprivation remedies and to require prior resort to them would be to say that Plaintiff must wait until the damage is done before seeking relief." (Dkt. 13, p. 7.) Plaintiff's argument is misplaced, as the Fifth Amendment does not require "that just compensation be paid in advance of, or contemporaneously with, the taking; all that is required is that a 'reasonable, certain and adequate provision for obtaining compensation' exist at the time of the taking." *Williamson*, 473 U.S. at 194 (quoting *Regional Rail Reorganization Act Cases*, 419 U.S. 102, 124025 (1974)). Plaintiff's claim is not ripe for review in federal court because she has not sought compensation through the adequate state remedies available to her.

Finally, Plaintiff suggests that where a taking by physical occupation is alleged, there is no requirement that the plaintiff exhaust administrative remedies before suing in federal court. (Dkt. 13, p. 7) (citing *Azul Pacifico, Incorp. v. City of Los Angeles*, 948 F.2d 575 (9th Cir. 1991)). This argument in unavailing because Plaintiff has not suffered a taking by physical occupation of her property. She retains title and possession to her home. Defendants have not intruded on the property, nor have they authorized others to do so. Further, the Ninth Circuit in *Azul Pacifico* reiterated that takings claims are not ripe until plaintiff comply with state judicial procedures for obtaining compensation, unless such procedures are futile due to repeated state court rulings that the type of takings claim at issue is non-compensable. *Id*. at 579. Plaintiff does not suggest Idaho

courts have ruled a takings claim such as that at issue here is non-compensable. Plaintiff has not established state court action would be futile, and thus fails to escape the *Williamson* ripeness criteria.

**ORDER**

**NOW THEREFORE IT IS HEREBY ORDERED**:

1. This Court lacks subject matter jurisdiction over Plaintiff's claims and the action must accordingly be **DISMISSED IN ITS ENTIRETY**.
2. Plaintiff's Motion for a Preliminary Injunction (Dkt. 3) is **DENIED** as **MOOT**.
3. Defendant's Motion to Strike Declaration of Cheryl A. Moody (Dkt. 22) is **DENIED** as **MOOT**;
4. Defendant's Motion for Summary Judgment (Dkt. 24) is **DENIED** as **MOOT**.

DATED: June 29, 2016

Edward J. Lodge
United States District Judge